UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERROL FALCON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-14271** |
| **JAMES LEBLANC, ET AL.** | **SECTION: "I"(3)** |

## REPORT AND RECOMMENDATION

Plaintiff, Errol Falcon, a Louisiana state prisoner, filed this federal civil action pursuant to 42 U.S.C. § 1983. He sued James LeBlanc, the Secretary of the Louisiana Department of Public Safety and Corrections ("LDPSC"), and Robert Tanner, the Warden of the Rayburn Correctional Center ("RCC"). In this lawsuit, plaintiff challenges the constitutionality of prison visitation policies.

### I. Plaintiff's Allegations

Plaintiff alleges that he is currently incarcerated at RCC based on a conviction for simple burglary. However, pursuant to prison policies, he was denied visitation with his minor children because he had been convicted of an unrelated sex offense in the distant past. He challenges the constitutionality of those policies, arguing that his children were not even born when he committed the crime of carnal knowledge of a juvenile in 1998. He alleges:

> Petitioner was at Rayburn Correctional Center from 09-04-12 to 08-08-16, and between those two dates there were two Wardens at this facility, Warden Robert Tanner, CCE and Warden Sandy McCain. Over that period of time Petitioner was granted over 100 visits and was only required to have the current guardians of my children write letters requesting to allow me to visit with my children or to allow someone specified to bring them to visit me here at RCC. **(TO NOTE: I have guardianship of all four of my children, documented by the Courts and these documents have been enclosed.)** This was in compliance with Department

> Regulation C-02-008 E. These letters were sent in to RCC. Plus, along with this requirement I was also required to take the BETG Sex Offender Class, which I have completed already prior to me being released the first time. With these two requirements I was able to visit with my children up to three times a month before, with the approval from Warden Tanner and also previously Warden McCain. All I had to do was request a visit and it was approved each and every time. They were all approved to come and visit me with my mother and father. Now the day I came back to Rayburn 09-04-18, I put in to have my children come and visit me, which was denied because they stated the guardians must send in letters requesting to bring my children to visit me or to allow someone on my approved visitation list to bring them to visit me and I must be enrolled in the BETG class again. Please note this is the exact same situation as the first time. My family wrote letters and I started the BETG classes. Once the letters came, they were not good enough, now they had to be notarized. My family traveled all the way to the courthouse and paid money to have this done. Once the letters arrived as the Warden required, my children were once again denied the right to visit me. Every time we complied with the request another stipulation was added. So my Mother and Father came up here to visit me on 01-11-19 and once again my children were not approved to see me.[1]

He further alleges that he has a "flawless disciplinary record" and has committed no sex offenses while in prison. He argues that he therefore should not have been denied visitation with his children based on an unrelated sex offense for which he had already served his sentence and completed his parole.

When plaintiff submitted an administrative grievance concerning this dispute, the grievance was denied by Warden Tanner, who stated:

> Your complaint has been reviewed and investigated.
>
> In accordance with Department Regulation #OP-C-9 (formerly C-02-008) Offender Visitation, sex offenders may be authorized to visit with their own biological minor child or minor step-child at the discretion of the Warden, as long as the sex offense did not occur with a family member.
>
> RCC Directive #5.4.1(N), Visiting Procedures, states, "Offenders who have a current or prior conviction for a sex crime involving a minor child who is not a family member are ineligible to visit with any minor child. However, at the Warden's discretion, such offenders may be authorized to visit with their own

---

[1] Rec. Doc. 4-1, pp. 8-9.

> biological child or minor step-child on a special visit if they are participating satisfactorily in sex offender treatment (Mental Health staff who teach the sex offender class will be involved in the decision-making process for this type of special visit.) The offender and legal guardian must initially submit a written request. If approved, the legal guardian must accompany the minor child during the visit. If approved by the Warden, the visit may be contact or non-contact at the Warden's discretion. After initial approval the offender may apply for special visits no more than once a month."
>
> We have established that your crime did not involve any of your children or any other family member. You were granted a Special Visit on December 21, 2018, with your son, Errol Falcon III. Your other children Brendan Falcon and Kaleb Falcon were not permitted to visit at this time due to not being able to establish guardianship.
>
> You were granted a Special Visit on February 9, 2019, with your sons, Brendon [sic] Falcon, Kaleb Falcon and Errol Falcon III. Your son, Kaden Falcon was not permitted to visit on this date due to us not having the proper verification of his guardianship. We are not trying to keep you from visiting with your children. Our procedures require certain documents and once those documents are provided for Kaden, he will be allowed to visit.
>
> No further relief is warranted for this complaint.[2]

Plaintiff then appealed to LDPSC Headquarters; however, Secretary LeBlanc's designee likewise denied relief, stating:

> Your request for an Administrative review of ARP #RCC-2019-87 has been received. A qualified member of the Headquarters staff has reviewed your request in order to render a fair and impartial response.
>
> Your allegations have been considered. First and foremost it is to be noted that per the Cajun database, on 5/17/99 you were convicted of Carnal Knowledge-Juvenile under Docket #97094 and on 1/06/03 you were convicted of Carnal Knowledge-Juvenile under Docket #024717. Department Regulation C-02-008 does provide exceptions to the guidelines and avenues to have visits approved for offenders with a current or prior sex offense involving a minor child, whether biological or not. One of the Department's goals is to ensure the safety of the public and may set regulations to ensure their safety. Lastly, visiting is a privilege and not a right. It has been determined, after a thorough review of all pertinent documentation, that your request has been satisfied. The response provided is clear and concise, as well

---

[2] Rec. Doc. 4-2, p. 6.

as has addressed your request appropriately. As such, this office concurs and finds no further investigation warranted.

Your request for relief is denied.[3]

The Court notes that the requirements necessary for visitation with the fourth son, Kaden, have apparently now been met as well, in that plaintiff has submitted documents showing that visits with Kaden were approved for January 3, 2020,[4] February 8, 2020,[5] February 15, 2020,[6] and February 28, 2020.[7] As a result, it appears that all four of plaintiff's children are currently permitted to visit. Accordingly, plaintiff now no longer summarizes his claim as one alleging that he is being denied visitation, but instead as one alleging that he is being denied "visitation rights to see his minor children without 'jumping through hurdles'."[8]

## II. Motion to Dismiss

The defendants have filed a motion to dismiss.[9] Plaintiff has opposed that motion.[10]

### A. Rule 12(b)(1)

The defendants first contend that the official-capacity claims against them for monetary damages should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). That rule governs challenges to a court's subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Association of Mississippi, Inc. v. City of Madison, 143 F.3d

---

[3] Rec. Doc. 4-2, p. 9.
[4] Rec. Doc. 15-1, p. 2.
[5] Rec. Doc. 15-2, p. 2.
[6] Rec. Doc. 15-3, p. 2.
[7] Rec. Doc. 15-4, p. 2.
[8] Rec. Doc. 15, p. 2.
[9] Rec. Doc. 13.
[10] Rec. Docs. 15 and 16.

4

1006, 1010 (5th Cir. 1998) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

LeBlanc, who serves as the LDPSC Secretary, and Tanner, who serves as the RCC Warden, are both employees of LDPSC, a department within the executive branch of the State of Louisiana. With respect to such state employees, the law is clear: "A suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment." Chaney v. Louisiana Work Force Commission, 560 F. App'x 417, 418 (5th Cir. 2014); accord Williams v. Thomas, 169 F. App'x 285, 286 (5th Cir. 2006); Watson-Buisson v. Louque, Civ. Action No. 12-1871, 2013 WL 5236611, at *1 (E.D. La. Sept. 13, 2013). [11] "When the Eleventh Amendment applies, [federal] courts lack subject-matter jurisdiction over the claim." Bryant v. Texas Department of Aging and Disability Services, 781 F.3d 764, 769 (5th Cir. 2015).

---

[11] As the United States Fifth Circuit Court of Appeals has explained:

> The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts. ... By statute, Louisiana has refused any ... waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See La.Rev.Stat.Ann. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002) (citations and quotation marks omitted); Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 313-14 (5th Cir. 1999).

Accordingly, the defendants' motion should be granted with respect to the official-capacity claims against LeBlanc and Tanner for monetary damages, if any,[12] and those claims should be dismissed for lack of subject-matter jurisdiction.

### B. Rule 12(b)(6)

The defendants next contend that plaintiff's remaining claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). That rule allows a defendant to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). However, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

---

[12] From plaintiff's opposition it appears that he may now be disclaiming any intention to assert any official-capacity claims for monetary damages; however, the opposition is not entirely clear. Therefore, out of an abundance of caution, the undersigned recommends that *if* such claims are being asserted, they should be dismissed because the Court lacks subject-matter jurisdiction over them.

6

In this lawsuit, plaintiff challenges three prison policies as unconstitutional: Regulation C-02-008; Directive 5.4.1; and Posted Policy #30. All three of those policies contain similar provisions. For example, Regulation C-02-008 provides in pertinent part:

a. Visitation Eligibility Between Incarcerated Sex Offenders and Minors

    i. The following sex offenders shall be ineligible to visit with any minor child, including their own biological minor child or minor step-child:

        a) Offenders who have a current or prior conviction for a sex crime involving a minor child family member, or

        b) Offenders who have a documented history of sex abuse with a minor child family member.

    ii. The following sex offenders may be authorized to visit with their own biological minor child or minor step-child at the discretion of the Warden:

        a) Offenders who have a current or prior conviction for a sex crime involving a minor child when the minor child is not a family member.

    iii. The following sex offenders may be authorized to visit with any minor child at the discretion of the Warden or his Designee:

        a) Offenders who have successfully completed or are participating satisfactorily in sex offender treatment. (Treatment staff who teach the sex offender treatment class shall be involved in the decision-making process for this type of visit.)

b. Establishing and Maintaining Visiting Lists Between Incarcerated Sex Offenders and Minors

    i. The legal guardian shall submit a written request to the Warden and shall accompany the minor child during the visit. The legal guardian may be permitted to name another individual (other than the legal guardian) who is on the offender's visiting list to accompany the minor child for a visit. The legal guardian shall provide a written,

7

>> notarized statement authorizing a specific individual to accompany the minor child.[13]

Similarly, Directive 5.4.1 provides in pertinent part:

> Offenders who have a current or prior conviction for a sex crime involving a minor child family member, or who have a documented history of sex abuse with a minor child family member, are ineligible to visit with any minor child, including their own biological or step child.
>
> Offenders who have a current or prior conviction for a sex crime involving a minor child who is not a family member are ineligible to visit with any minor child. However, at the Warden's discretion, such offenders may be authorized to visit with their own biological child or minor step-child on a special visit if they are participating satisfactorily in sex offender treatment (Mental Health staff who teach the sex offender class will be involved in the decision-making process for this type of special visit.) The offender and legal guardian must initially submit a written request. If approved, the legal guardian must accompany the minor child during the visit. If approved by the Warden, the visit may be contact or non-contact at the Warden's discretion. After initial approval the offender may apply for special visits no more than once a month.
>
> The legal guardian may be permitted to name another individual (other than the legal guardian) who is on the offender's visiting list to accompany the minor child for a visit. The legal guardian shall provide a written, notarized statement authorizing a specific individual to accompany the minor child.[14]

Likewise, Posted Policy #30 provides in pertinent part:

> A. Offenders who have a current or prior conviction for a sex crime involving a minor child family member, or who have a documented history of sex abuse with a minor child family member, are ineligible to visit with any minor child, including their own biological or step-child (see below for possible exception).
>
> B. Offenders who have a current or prior conviction for a sex crime involving a minor child who is not a family member are ineligible to visit with any minor child. However, at the Warden's discretion, such offenders may be authorized to visit with their own biological child. The legal guardian shall submit a written request and shall accompany the minor child during the visit. If approved by the Warden, the visit may be contact or non-contact at

---

[13] Rec. Doc. 4-3, p. 15.
[14] Rec. Doc. 4-3, p. 17.

    the Warden's discretion. The legal guardian may be permitted to name another individual (other than the legal guardian) who is on the offender's visiting list to accompany the minor child for a visit. The legal guardian shall provide a written, notarized statement authorizing a specific individual to accompany the minor child. If approved by the Warden, the visit may be contact or non-contact at the Warden's discretion (see below for possible exception.)

  C. Special visits for offenders who have successfully completed or are participating satisfactorily in sex offender treatment may be considered by the Warden. (Treatment staff who teach the sex offender class shall be involved in the decision-making process for this type of special visit.) The legal guardian shall submit a written request and shall accompany the minor child during the visit. The legal guardian may be permitted to name another individual (other than the legal guardian) who is on the offender's visiting list to accompany the minor child for a visit. The legal guardian shall provide a written, notarized statement authorizing a specific individual to accompany the minor child. If approved by the Warden, the visit may be contact or non-contact at the Warden's discretion.

  D. Minor children may be prohibited from participating in non-contact visits at the discretion of the Warden.[15]

Plaintiff argues that the foregoing policies are unconstitutional because they are being used to deny him his "absolute right to visit his children."[16] In their motion, the defendants argue that plaintiff's claims are subject to dismissal under Rule 12(b)(6) because no such absolute right exists. They are correct.

The United States Fifth Circuit Court of Appeals has expressly held: "Convicted prisoners have no absolute constitutional right to visitation." Lynott v. Henderson, 610 F.2d 340, 342 (5th Cir. 1980); accord Toppins v. Day, No. 02-31016, 2003 WL 21757342, at *3 (5th Cir. June 26, 2006) ("The Supreme Court has ruled that prisoner's right to unfettered visitation is not directly protected by the Due Process Clause."); Thorne v. Jones, 765 F.2d 1270, 1274 (5th Cir. 1985)

---

[15] Rec. Doc. 4-3, pp. 14 and 16.
[16] Rec. Doc. 4-1, p. 8.

9

("[I]ncarcerated persons … maintain no right to simple physical association – with their parents or with anyone else – grounded in the first amendment.").

That said, the Court of Appeals has cautioned:

> Even so, limitations of visitation may be imposed only if they are necessary to meet legitimate penological objectives, such as rehabilitation and the maintenance of security and order. Moreover, the court must look to see whether the prison's visitation practices actually further these objectives and whether prisoners are given adequate procedural safeguards, including [m]eaningful written responses to their requests.

Lynott, 610 F.2d at 342-43 (citations and quotation marks omitted). In this lawsuit, the challenged policies comply with those limitations for the following reasons.

The policies are clear: A prisoner, such as plaintiff, who was convicted of a sex crime involving a minor child who was not a family member *is* permitted visitation with his own biological children or his stepchildren *so long as* certain administrative requirements are met. Specifically, the Warden may allow such visitation if (1) the prisoner has successfully completed or are is participating satisfactorily in sex offender treatment and (2) the children's legal guardian gives written permission for such visitation. Those two requirements are neither onerous nor unreasonable. Requiring an individual who has been convicted of a sex crime involving a minor to undergo sex offender treatment before he can visit with minors is a reasonable precaution to further the legitimate objective of protecting such minors from potential harm. Likewise, requiring written consent from the guardian serves that same purpose and further respects and protects the guardian's legal right to make decisions.

As to the additional requirement that the guardian's written consent be *notarized* if the guardian is authorizing someone *other than the guardian* to bring the minor to visit, that requirement is likewise reasonable. Because one can easily imagine instances where an individual

10

(such as a prisoner's parent) might be tempted to surreptitiously bring the prisoner's minor child for visitation against the legal guardian's wishes, the notarization requirement is a legitimate precaution to guard against such potential abuses and to ensure that the guardian's rights are protected. Further, to the extent that plaintiff may be contending that the notarization requirement is nevertheless unnecessarily onerous, the Court disagrees. Requirements that a wide array of legal documents be notarized are common in our society, and, as a result, notary services are generally inexpensive and readily available. Moreover, plaintiff does not suggest, and the policies certainly do not indicate, that the notarization requirement must be fulfilled more than once with respect to an authorized non-guardian.

The only remaining restriction is that the affected prisoners are limited to only one such visit per month. However, additional effort and resources must obviously be expended to process such visitors. For example, when such visitors arrive, the guards on duty must ensure that the aforementioned paperwork has been received by the prison and that the visitation has in fact been approved by the Warden – steps which are unnecessary when processing other visitors. Those additional administrative burdens can cause confusion and take time to resolve – in fact, plaintiff himself recounts a visit on January 3, 2020, during which prolonged confusion reigned at the prison when the processing guard was unaware that plaintiff had been approved for visitation with his children.[17] In light of such realities, the limitation on the frequency of such visits is not unreasonable.

For these reasons, the undersigned finds that the limitations on visitation imposed in the challenged policies are reasonable ones that further legitimate objectives.

---

[17] Rec. Doc. 10.

The undersigned additionally finds that adequate procedural safeguards exist regarding the policies' implementation. That is evident from the very documentation plaintiff has attached to his complaint. Those documents show that plaintiff was repeatedly advised in writing as to what was required to receive authorization for visitation under the policies. Moreover, when he felt that the policies were being wrongly applied, he was given the opportunity to submit a formal written grievance, and he received meaningful written responses to that grievance from both RCC staff and LDPSC Headquarters staff.

Accordingly, for all of these reasons, the undersigned finds that the challenged policies are not, in and of themselves, unconstitutional.

The undersigned is aware, however, that plaintiff also claims that that the policies nevertheless violate his constitutional right to Equal Protection because prisoners convicted of sex offenses against children are subject to the policies while prisoners convicted of other serious crimes, such as murder, are not. The Court can easily dispose of that claim. As the United States Fifth Circuit Court of Appeals has explained:

> To establish an equal protection claim, [a plaintiff] must show that two or more classifications of similarly situated persons were treated differently. Once this element is established, the court must then determine the appropriate level of scrutiny. Strict scrutiny is appropriate only where a government classification implicates a suspect class or a fundamental right. Otherwise, rational-basis review applies and this court need only determine whether the classification is rationally related to a legitimate government interest.

Gallegos-Hernandez v. United States, 688 F.3d 190, 195 (5th Cir. 2012) (citations, quotation marks, and brackets omitted).

As an initial matter, plaintiff's equal protection claim fails because the two groups he compares, i.e. prisoners convicted of sex crimes against children and prisoners convicted of other

crimes, are not similarly situated. Cf. Biester v. Lanier, 249 F. App'x 782, 783 (11th Cir. 2007) ("[Plaintiff] cannot establish equal protection violations based on his status as a sex offender, however, because he has not shown that sex offenders are similarly situated to non-sex offenders."); Hastings v. Suthers, 26 F. App'x 885, 885-86 (10th Cir. 2002) ("[Plaintiff's] the equal protection argument fails because [he] has not shown that non-sex offenders are similarly situated to sex offenders.").

Second, even if the two groups were similarly situated, plaintiff's equal protection claim would still fail for the following reasons.

Sex offenders are not a "suspect class." Bell v. Woods, 382 F. App'x 391, 392 (5th Cir. 2010) ("Inmates convicted of a sexual offense are not a suspect class …."); Wottlin v. Fleming, 136 F.3d 1032, 1036 (5th Cir. 1998) ("A classification that categorizes inmates based on the type of criminal offenses for which they have been convicted does not implicate a suspect class.").

Moreover, plaintiff's claim also involves no "fundamental right." "A 'fundamental right,' for purposes of equal protection analysis, is one that is among the rights and liberties protected by the Constitution." Wottlin, 136 F.3d at 1036 (quotation marks omitted). For the reasons already explained herein, prison visitation is not such a right.

Therefore, in an equal protection analysis, the policies challenged herein would be subject only to the "more lenient 'rational basis' standard" and would be valid if merely "rationally related to a legitimate governmental interest." Id. at 1037. As already explained, the challenged policies are clearly rationally related to the legitimate governmental interests of protecting minor children and the rights of the children's guardians.

Lastly, the undersigned also notes that plaintiff argues that not only were *his own rights* violated – a argument which this Court has already rejected for the reasons above – but also that the policies infringe upon *his children's rights* under First Amendment. However, even assuming plaintiff has standing to assert such a claim on behalf of his children, there has been no such violation. The First Amendment simply does not encompass a right of individuals to visit their incarcerated relatives. See Thorne v. Jones, 765 F.2d 1270 (5th Cir. 1985).

Accordingly, for all of the foregoing reasons, the undersigned finds that plaintiff's remaining claims are subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[18]

## RECOMMENDATION

It is therefore **RECOMMENDED** that the defendants' motion to dismiss, Rec. Doc. 13, be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's official-capacity claims for monetary damages, if any, be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**IT IS FURTHER RECOMMENDED** that plaintiff's remaining claims be **DISMISSED WITH PREJUDICE** for failing to state a claim upon which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from

---

[18] Because the Court finds that all of plaintiff's claims are subject to dismissal under Rules 12(b)(1) and 12(b)(6), the Court need not address the alternative grounds for dismissal advanced in the defendants' motion.

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[19]

New Orleans, Louisiana, this __3rd__ day of April, 2020.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**

---

[19] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.